UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SILVANO ORSI                    )
                                )
              Plaintiff,        )    CIVIL ACTION NO.
                                )    11-10451-DPW
                                )
       v.                       )
                                )
H.H. SHEIK FALAH bin ZAYED      )
bin Sultan AL-NAHYAN,           )
                                )
              Defendant.        )

MEMORANDUM AND ORDER
September 25, 2012

Silvano Orsi ("Orsi") asserts claims for defamation and
infliction of emotional distress against His Highness Sheikh
Falah bin Zayed bin Sultan Al-Nahyan ("Al-Nahyan"), brother of
the current President of Abu Dhabi.  He seeks leave under Fed. R.
Civ. P. 4(f)(3) to effectuate service by alternative means.

This is Orsi's second motion to effectuate service by
alternative means.  In reviewing the first motion, I was troubled
by the complaint's conclusory allegations of contacts between Al-
Nahyan and Massachusetts.  I ordered that Orsi provide additional
allegations regarding personal jurisdiction over the defendant in
this court sufficient to justify the use of alternative means of
service.  In doing so, I warned that "[f]ailure to provide the
requisite specificity may result in the dismissal of this
action."  Thereafter, Orsi filed an amended complaint and the

supplemental motion before me now, which includes briefing on
personal jurisdiction.

## I. BACKGROUND

### A.   *Factual Background*

The facts alleged by Orsi are briefly summarized as follows.
On August 19, 2003, Orsi encountered Al-Nahyan in the lounge of
*La Reserve* hotel in Geneva, Switzerland.  After Orsi refused
certain social invitations and sexual advances by Al-Nahyan, Al-
Nahyan allegedly assaulted Orsi, whipped him with his belt, and
called him a "Stupid American"--all resulting in serious physical
and emotional injury.  Orsi was restrained for several hours at
the hotel.  In the weeks that followed, he received several
threats from Al-Nahyan's "agents" in Geneva.

In November 2003, fearing for his safety, Orsi went to live
in his family's home in Rome.  Orsi also apparently spent some
time at his family's home in upstate New York, before obtaining
an L.L.M. in 2010 at Queen Mary School of Law in London, and an
L.L.M. at Boston University Law School in 2011.  All the while,
Orsi says Al-Nahyan's agents continued to contact and harass him.

To bolster his showing on personal jurisdiction, Orsi
highlights communications he received while in the United States
from Alan Howell Parrot and Roman Paschal.  According to Orsi,
Parrot worked for Al-Nahyan's father for over twenty years.
Parrot has also been publicly critical of UAE royals, and even
offered to testify in support of Orsi.  Nevertheless, Orsi claims
Parrot was, in fact, an agent of Al-Nahyan, who was trying to

intimidate him by emphasizing the dangerousness and ruthlessness of the royal family, and also trying to obtain information he could relay back to Al-Nahyan.  Paschal, meanwhile, is an alleged confidant of Al-Nahyan who has tried to feed Orsi salacious but false stories about the royal family and the UAE Ambassador, in hopes that Orsi would embarrass himself by attempting to exploit this information.

**B.   *Procedural Background***

In June 2006, Al-Nahyan was indicted in Geneva's criminal court on charges of assault and battery, and deliberately inflicting bodily harm with a dangerous instrument.  His 2008 conviction was later overturned.

Orsi initiated this action in March 2011, while also pursuing a civil action in Geneva seeking damages for personal injuries ("the Swiss action").  The crux of Orsi's defamation claim is that, during and since the encounter, Al-Nahyan and his affiliates made false statements implying that Orsi is homophobic and violent.  Specifically, Orsi alleges Al-Nahyan has misrepresented the events of August 19, 2003--for example, by saying Orsi provoked the encounter by calling Al-Nahyan "gay," and that Orsi also assaulted Al-Nahyan.  The claim for infliction of emotional distress, meanwhile, seems to draw on the entire course of conduct by Al-Nahyan and his agents during and since the incident.

I allowed Orsi until October 17, 2011 to effect service, a deadline he attempted to meet in three ways.  First, Orsi

attempted to serve Marco Crisante, Al-Nahyan's lawyer in the
Swiss action.  Second, Orsi attempted to serve Faraj Ahnish, whom
Orsi calls the "self-proclaimed attorney for the royal family."
Finally, Orsi sent a copy of the Summons and Complaint by Federal
Express to what Orsi claims is Al-Nahyan's "officially designated
business office" in Abu Dhabi.  Crisante and Ahnish denied any
authority to accept service, and Orsi received no response from
the business office.

I conclude that Orsi has not justified the use of
alternative means of service.  I base my decision independently
on fundamental considerations of fairness in service of process
and the additional complications of foreign service.  That said,
I also find that Oris's conclusory allegations as to personal
jurisdiction do not merely caution against giving him unusual
tools to pursue his allegations in this court; they also
demonstrate the case has no place in this jurisdiction at all,
because the allegations are inadequate to support personal
jurisdiction in this court.

## II. SERVICE OF PROCESS

### A.  *Standard*

Rule 4(f) prescribes the means of serving an individual "not
within any judicial district of the United States."  Fed. R. Civ.
P. 4(f).

Rule 4(f)(1) suggests internationally-agreed means such as
the Hague Convention, but the United Arab Emirates ("UAE") is not
a party to that agreement, and I am not aware of any other

-4-

agreement on service of process between the United States and the UAE. *See Nabulsi* v. *H.H. Sheikh Issa Bin Zayed Al Nahyan*, No. H-06-2683, 2007 WL 2964817, at *4 (S.D. Tex. Oct. 9, 2007).

In such cases, Rules 4(f)(2) and (3) provide alternatives for service:

> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by:
>>
>>> (I) delivering a copy of the summons and of the complaint to the individual personally; or
>>>
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Most courts agree that Rule 4(f) does not create a strict "hierarchy," whereby a plaintiff must exhaust the methods of service suggested by Rules 4(f)(1) and (2) before the court may entertain alternative service under Rule 4(f)(3). *See, e.g.*, *Rio Properties, Inc.* v. *Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002); *Forum Fin. Group, LLC v. President, Fellows of Harvard Coll.*, 199 F.R.D. 22, 24 & n.3 (D. Me. 2001); *Nablusi*, 2007 WL 2964817, at *4. But it is relevant whether plaintiff has made reasonable efforts to serve defendants by conventional means before petitioning for permission to serve by alternative means.

-5-

*See W. Supreme Buddha Ass'n, Inc. v. Oasis World Peace & Health Found.*, No. 08-CV-1374, 2011 WL 856378, at *1-2 (N.D.N.Y. Mar. 9, 2011).

In the final analysis, Rule 4(f)(3) "commit[s] to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process." *Rio Properties*, 284 F.3d at 1016; *accord In re Int'l Telemedia Associates, Inc.*, 245 B.R. 713, 719 (Bankr. N.D. Ga. 2000) (rule designed to give court "flexibility and discretion").

## B. Analysis

Insofar as service is designed merely to provide a defendant with notice and an opportunity to respond, *see Rio Properties*, 284 F.3d at 1017; *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), Orsi has made a reasonable request to effect service by alternative means. In all likelihood, Al-Nahyan is aware of this suit and Orsi's allegations, given Orsi's representations that Al-Nahyan's Swiss counsel proposed a "global settlement" of both the Swiss and U.S. actions, and the fact that copies of the summons and complaint in this matter were distributed by the judge in the Swiss action to defense counsel. This suit has also received at least some mainstream news coverage. Thus, allowing service upon Al-Nahyan's Swiss counsel would likely satisfy due process minima, broadly conceived.[1]

---

[1] The same cannot be said for service to Ahnish or Al-Nahyan's "business office." There is no documentation that Ahnish is the "self-proclaimed attorney for the royal family,"

Additional concerns are present, however, with respect to foreign service.  The Advisory Committee Notes to Rule 4 caution that, when considering alternative means of service, "an earnest effort should be made to devise a method of communication that is consistent with due process *and minimizes offense to foreign law*."  Fed. R. Civ. P. 4, advisory committee note (emphasis added).

Although Rule 4(f) may not strictly require a party to exhaust all other options before requesting alternative service, Orsi—at least as far as is documented in his motion--has not even attempted to effectuate service in ways that would do less violence to UAE law.  Indeed, Orsi has not demonstrated any serious effort to use accepted methods of service in the UAE, as suggested by rule 4(f)(2)(A).  For example, Orsi asserts that "no courier would accept the task of serving court papers on Sheikh Falah within the territorial jurisdiction of the UAE."  But as far as appears on this record, that assertion is mere conjecture; Orsi has not documented any attempts to contact such couriers, let alone refusals on their part.  Neither has Orsi attempted to use the letter rogatory process under 4(f)(2)(B), or demonstrated

---

but only that Ahnish served as an expert witness on UAE rules of procedure in a suit against Al-Nahyan's brother.  *Nabulsi* v. *H.H. Sheikh Issa Bin Zayed Al Nahyan*, No. H-06-2683, 2007 WL 2964817(S.D. Tex. Oct. 9, 2007).  Similarly, Orsi asserts the "Italian Embassy in Abu Dhabi confirmed, as recently as July, 2011, that . . . Defendant continues to headquarter his UAE operations at the address listed," but he provides no documentation of this confirmation.

that the UAE would, for whatever reason, be unresponsive to the
letter rogatory process.

Instructive in this regard is *Smallwood* v. *Allied Pickfords,
LLC*, No. 08-CV-2196, 2009 WL 3247180 (S.D. Cal. Sept. 29, 2009),
where the court quashed service on a UAE defendant based on
plaintiff's failure to comply with UAE Civil Procedure Law--in
particular, Article 5, which requires service by a court bailiff
or private company appointed by the UAE Ministry of Justice.
Despite these procedural hurdles, the court found that a
"reasonable prospect exist[ed]" that plaintiff would still be
able to serve the defendant properly.  *Smallwood*, 2009 WL
3247180, at *13-14.

Although *Smallwood* was decided in a different procedural
posture--namely, the UAE defendant's motion to dismiss for
insufficient service under Fed. R. Civ. P. 12(b)(5)--the UAE
defendant made no contention that it lacked actual notice of the
action or suffered prejudice, *Smallwood*, 2009 WL 3247180, at *12,
and the court found it properly had personal jurisdiction over the
UAE defendant, *id.* at *16.  The court nevertheless quashed service
based on the lack of reasonable diligence required of the
plaintiff, and the importance of minimizing offense to foreign law
when possible.

The policy considerations are no different here.  Before
allowing Orsi to effect service by alternative means, I would

-8-

require a stronger showing that service under UAE law or other means more respectful of the foreign jurisdiction, such as the letter rogatory process, is unavailable or at least prohibitively impractical.

For these reasons alone, I will deny Orsi's motion, and the resulting failure to effect proper service by the court-ordered deadline provides grounds for dismissal of this action.[2]

### III. PERSONAL JURISDICTION

Orsi's failure to demonstrate that Al-Nahyan has sufficient contacts with Massachusetts to establish personal jurisdiction prompts me to dismiss the case on the alternative grounds of lack of personal jurisdiction.

**A. *Standards***

1. Procedural

This court has authority to dismiss plaintiff's complaint on personal jurisdiction grounds at this stage.  Orsi was placed on notice that the court might dismiss this matter for lack of personal jurisdiction if his allegations remained deficient, and the court provided an opportunity to remedy the deficiencies.

---

[2]Although the 120-day time limit for service under Fed. R. Civ. P. 4(m) does not apply to foreign service, the time allowed for foreign service is not unlimited. *Feliz* v. *MacNeill*, No. 10-1549, 2012 WL 3590807, at *3 (1st Cir. Aug. 22, 2012).  The question is what is reasonable under the circumstances. *Id.*  I extended Orsi a total of 210 days to effect service and warned that "no further extensions shall be anticipated."  Orsi, meanwhile, made only the minimal efforts at service already described.

I recognize that the First Circuit has said that "a district court has no authority, *sua sponte*, to dismiss for lack of personal jurisdiction," *Pilgrim Badge & Label Corp.* v. *Barrios*, 857 F.2d 1, 3 (1st Cir. 1988), but the statement is more limited than it sounds.  In *Pilgrim Badge*, the defendant had waived the defense of lack of personal jurisdiction and thus, in context, it was clear the court simply held it is inappropriate to override a defendant's *waiver* of personal jurisdiction.  *See also Uffner* v. *La Reunion Francaise*, S.A., 244 F.3d 38, 41 (1st Cir. 2001) ("*Once a party has waived its defense of lack of personal jurisdiction, the court may not, sua sponte, raise the issue in its ruling on a motion to dismiss.*" (emphasis added)).

More pertinently, the First Circuit has stated that

> a district court may, in appropriate circumstances, note the inadequacy of the complaint and, on its own initiative, dismiss the complaint.  Yet a court may not do so without at least giving plaintiffs notice of the proposed action and affording them an opportunity to address the issue.

*Wyatt* v. *City of Boston*, 35 F.3d 13, 14-15 (1st Cir. 1994) (quoting *Literature, Inc.* v. *Quinn*, 482 F.2d 372, 374 (1st Cir. 1973)).  Once the court "asks [a plaintiff] for more specifics, a serious effort to flesh out the complaint is fairly to be expected."  *Pruell* v. *Caritas Christi*, 678 F.3d 10, 14 (1st Cir. 2012).

In *Buchanan* v. *Manley*, 145 F.3d 386, 388-89 (D.C. Cir. 1998), the D.C. Circuit applied principles similar to those set forth in *Wyatt* and *Pruell* to find harmless the district court's dismissal

-10-

of a complaint, before service of process, for improper venue--an
issue waivable in the same manner as personal jurisdiction--after
allowing plaintiff to brief the issue for the first time on
appeal.  Here, Orsi has had the opportunity to supplement his
allegations and briefing on personal jurisdiction.  *Buchanan*
illustrates the authority of a court, in such circumstances, to
take steps "to avoid [imposing on a defendant] the burden of
appearing in a case that appears clearly to have been brought in
the wrong court."  *Id.*

    2.  <u>Substantive</u>

Even viewing all allegations and reasonable inferences in
favor of Orsi, he does not make a "prima facie" showing of
personal jurisdiction over Al-Nahyan in Massachusetts.  "[A] *prima
facie* showing of personal jurisdiction must be based on evidence
of specific facts set forth in the record. The plaintiff must go
beyond the pleadings and make affirmative proof."  *Boit* v. *Gar-Tec
Products, Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (internal
quotations and citations omitted).  I will "not credit conclusory
allegations or draw farfetched inferences."  *Ticketmaster-New
York, Inc.* v. *Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

In this diversity action, Orsi must show that personal
jurisdiction is permitted under both the Massachusetts Long Arm
Statute, Mass. Gen. Laws ch. 223A § 3, and the constitutional
requirements of due process.  *Good Hope Industries, Inc.* v. *Ryder
Scott Co.*, 389 N.E.2d 76, 79 (Mass. 1979).  That said, these
inquiries are for the most part co-extensive because the Long Arm
Statute asserts jurisdiction to the constitutional limits.  *Id.*

In the now-classic formulation, due process requires that a defendant "have certain minimum contacts with [the forum of suit] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940)).  Under the "purposeful availment" requirement, a defendant must have "deliberately" created a "substantial connection" with the forum state.  *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 475 (1985).

Personal jurisdiction can be general or specific.  "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United Elec. Workers* v. *163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992). "Specific personal jurisdiction, by contrast, is narrower in scope and may only be relied upon 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" *Pritzker* v. *Yari*, 42 F.3d 53, 60 (1st Cir. 1994) (quoting *United Elec. Workers*, 960 F.2d at 1088–1089).

Orsi cites only section 3(d) of the Long Arm Statute, which authorizes general jurisdiction over a defendant who "causes tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct" inside the commonwealth.  I will give Orsi the benefit of the doubt that he

also meant to invoke section 3(a), which permits specific jurisdiction "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business" in Massachusetts.[3]  In any event, Orsi is far from making the specific allegations necessary to establish either general or specific jurisdiction.

**B.  *Analysis***

Orsi's complaint is not a model of clarity, but I have culled what appear to be all the relevant allegations that might support personal jurisdiction over Al-Nahyan.

1.  <u>Orsi</u>

Orsi's jurisdictional allegations all concern Al-Nahyan's contacts *with Orsi* (as opposed to other unrelated contacts with Massachusetts that might support general jurisdiction).  As a result, the time frame for contacts establishing personal jurisdiction over the defendant in Massachusetts is limited by when Orsi had any connection to Massachusetts.  So, before even turning to Al-Nahyan's contacts, I must examine Orsi's own contacts with Massachusetts--a topic about which he provides only the slightest detail.

The core allegations of the complaint travel to Switzerland, Italy, and New York.  The only apparent connection to

---

[3]Despite the statutory language, the Massachusetts test for specific jurisdiction parallels the federal.  *Foster-Miller, Inc*. v. *Babcock & Wilcox Canada*, 46 F.3d 138, 144 n.3 (1st Cir. 1995) ("transacting any business" and "arising from" elements of section 3(a) of the Long Arm Statute correspond to the federal constitutional requirements of "minimum contacts" and "relatedness").

Massachusetts is Orsi's time at Boston University Law School, where he was studying as of the filing of this action. But Orsi does not even specify when he arrived in Boston, or how long his program ran. He apparently did not intend to stay for long, declaring that he planned to sit for the New York bar exam in July 2011.

Most charitably to Orsi, I will assume he has resided in Boston from sometime in 2010, after he completed his L.L.M. from Queen Mary School of Law, until the present.

2.  The Precipitating Incident

None of the events from August 19, 2003--the day of the incident--can establish contacts with Massachusetts. Not only does Orsi not allege he had any connection to Massachusetts at that time, but there is also no indication that Al-Nahyan or any of his affiliates knew of that connection, or had any idea that their statements or actions had ramifications in Massachusetts, let alone that they intended any injury to be felt in Massachusetts. *See Burger King*, 471 U.S. at 475; *see also Noonan v. Winston Co.*, 902 F. Supp. 298, 305 (D. Mass. 1995), *aff'd*, 135 F.3d 85 (1st Cir. 1998) ("[A] defamatory 'effect' by itself is not sufficient to confer jurisdiction over a foreign defendant. Rather, to make a prima facie showing, the victim of the defamatory statement must demonstrate that its author *intended* the libel to be felt in the forum state.").

### 3.   Subsequent Statements and Events

Orsi is no more specific about what later statements or events might establish jurisdiction.  His various encounters with Al-Nahyan's alleged agents in Geneva face the same problem as the events on the day of the incident itself.  There is next to no detail about what further conduct might support Orsi's claims.

One glimmer of specificity can be found in Orsi's complaint about statements made by Al-Nahyan's lawyer during the Swiss criminal prosecution, as well as later declarations by his lawyers and Al-Nahyan himself to the media.  But, again, as to the events in the Swiss criminal action in 2006 or 2008, Orsi has established no connection to Massachusetts before 2010.[4]

As for statements made to the media, Orsi provides only a single newspaper article related to his case.[5]  That article is dated March 2011, and provides a potential contact while Orsi resided in Massachusetts.  But the article only states that "Al Nahyan *has denied* Orsi's allegations" and that Al-Nahyan's lawyer "said *previously* that Orsi's legal complaint was full of lies

---

[4]Even if Orsi were in Boston at any of the relevant times and Al-Nahyan or his lawyer knew that, and assuming Orsi also seeks to invoke Massachusetts substantive law, statements made by Al-Nahyan's lawyer in the course of litigation are absolutely privileged and cannot be the basis for Orsi's defamation claim. *See Correllas* v. *Viveiros*, 572 N.E.2d 7, 10 (Mass. 1991).

[5]The privilege discussed in the previous footnote does not apply to statements made to the media.  *Robert L. Sullivan, D.D.S., P.C.* v. *Birmingham*, 416 N.E.2d 528, 531 (Mass. App. Ct. 1981).

meant to pressure the sheik for money."  The article thus gives no specific information as to these statements, when they were made, or the context in which they were made, let alone whether they were made with any intent to cause harm in Massachusetts.

Beyond that, Orsi says only that Al-Nahyan "repeatedly made" defamatory statements and that "[a]t all times relevant to this complaint," Al-Nahyan engaged in "acts" that caused emotional distress.  But there is no detail--let alone the required "specific facts," *Boit*, 967 F.2d at 675--as to what else was said or done by Al-Nahyan, when it was said or done, whether Orsi had any ties to Massachusetts at the time, and whether whoever said or did whatever they did had any intent to cause injury in Massachusetts.

### 4. The "Agents"

The only exception to the otherwise complete lack of detail is in Orsi's recitations of his interactions with Parrot and Paschal.  The allegation that these individuals are "agents" of Al-Nahyan is in itself far-fetched, but I will assume for purposes here that they are in fact agents whose contacts with Massachusetts could create personal jurisdiction over Al-Nahyan.

The problem is that Orsi again fails to make a single specific factual allegation as to these agents' contacts with Massachusetts.  Orsi describes letters from Parrot that were sent to Orsi's attorneys *abroad* at times when Orsi has not bothered to

allege where he lived--in April 2006 and June 2008.  Orsi also describes in detail on phone call he received from Parrot in April 2006, but which was made to Orsi's family home in New York.[6]  The only specifically-described and documented contact with Paschal occurred in June 2008 when, again, Orsi has not alleged any connection to Massachusetts.

Orsi's allegations beyond these contacts are not only conclusory, but evasive.  For example, Orsi says that Paschal and Parrot "have continuously and deliberately contacted me *in the U.S. Jurisdiction*," an allegation which conspicuously avoids specifying *where* in the United States any contacts occurred.  At most, Orsi declares that Parrot "regularly contacted" him, but stopped in March 2011, which by implication alleges that some communication was directed into Massachusetts while Orsi lived in Boston.

In the final analysis, I am obligated to refuse to credit "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts."  *Johnston* v. *Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008).  That is what Orsi's assertions amount to.  They do not adequately allege personal jurisdiction over the defendant.

---

[6]Orsi never actually specifies the location of this family home, but does provide the phone number.  I take judicial notice that the "585" area code of the phone number provided corresponds to a part of western New York covering Rochester and surrounding areas.

## IV. CONCLUSION

For the reasons set forth more fully above, plaintiff's motion to effectuate service via alternative means (Dkt. No. 10) is DENIED, and the Clerk is directed to dismiss this case.


***/s/ Douglas P. Woodlock***
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE